Mary L. Hamilton *v.* The Royal Arcanum et al.   Appeal of William Hamilton, Charles E. Hamilton, Adelia Kelley, Elizabeth Berger and Arabella Hamilton, children of Charles W. Hamilton.

*Beneficial associations—Change of beneficiary—Delivery—Intention.*

A became a member of a beneficial association in 1879.   In the certificate issued to him his three daughters were named as beneficiaries.   In 1880 he married the plaintiff, and in the same year he surrendered the original certificate and received a second one in which she was the sole beneficiary.   In 1891, because of difficulties with plaintiff, he surrendered all claim under the second certificate, but not the certificate itself, which was retained by plaintiff, he receiving a third certificate in which his daughters and a son were named as beneficiaries.   A reconciliation between himself and plaintiff was afterwards effected and they lived together for some time before his death, which occurred suddenly on February 8, 1898.   Six days before his death he prepared a written surrender of the third certificate and a request for a new certificate, in which his children and his wife were named as beneficiaries.   He enclosed this writing, together with the third certificate, in an envelope which he sealed and addressed to the supreme secretary in another city.   He left this envelope in his desk, where it was found after his death.   He was secretary of the chapter to which he belonged, and as secretary he had attested the written surrender and affixed thereto the seal of the chapter.   The regulations of the order provide that " the change of beneficiary shall take effect upon delivery of the benefit certificate, the written surrender and direction for change . . . . to the regent secretary . . . . of the council to which the member belongs."   *Held*, (1) that there was a valid surrender of the second certificate ; (2) that the surrender of the third certificate had not been perfected by delivery, inasmuch as the member, although an officer, had complete control of the papers until his death ; (3) that the daughters and son named in the third certificate were entitled to the funds.

Argued Nov. 12, 1898.   Appeal, No. 81, Oct. T., 1898, by William Hamilton et al., from decree of C. P. No. 1, Allegheny Co., June T., 1897, No. 156, on bill in equity.   Before GREEN, McCOLLUM, MITCHELL, DEAN and FELL, JJ.   Reversed.

Bill in equity to determine the ownership of a beneficiary fund.

The facts appear by the opinion of the Supreme Court.

*Error assigned* was the decree of the court.

*J. A. Langfitt,* with him *C. E. Cornelius,* for appellants.—The certificate dated October 16, 1891, was the only one in force: Supreme Lodge v. Nairn, 60 Mich. 44; Niblack on Benefit Societies, 424; Hotel Men's Mutual Ben. Ass'n v. Brown, 33 Fed. Rep. 11; Niblack on Benefit Societies, sec. 218; Wendt v. Iowa Legion of Honor, 72 Iowa, 682; Mellows v. Mellows, 61 N. H. 137; Holland v. Taylor, 111 Ind. 121: Vollman's App., 92 Pa. 50; May on Ins. (3d ed.) "Beneficiaries"; Hall v. Association, 47 Minn. 85; Ireland v. Ireland, 42 Hun, 212.

*A. Blakeley,* for appellee.

OPINION BY MR. JUSTICE FELL, January 2, 1899:

Charles W. Hamilton became a member of the Royal Arcanum, a beneficial association, in 1879. In the certificate issued to him his three daughters were named as beneficiaries. In 1880 he married the plaintiff, and in the same year he surrendered the original certificate and received a second one in which she was the sole beneficiary. In 1891, because of domestic difficulties, he surrendered all claim under the second certificate, but not the certificate itself, which was retained by his second wife, and received a third certificate in which his daughters and a son were named as beneficiaries. A reconciliation between himself and his wife was afterwards effected and they lived together for some time before his death, which occurred suddenly on February 8, 1898. Six days before his death he prepared a written surrender of the third certificate and a request for a new certificate, in which his children and his wife were named as beneficiaries. He enclosed this writing, together with the third certificate, in an envelope which he sealed and addressed to "W. O. Robson, Supreme Secretary, Boston, Mass." He left this envelope in his desk, where it was found after his death. He was secretary of the chapter to which he belonged, and as secretary he had attested the written surrender and affixed thereto the seal of the chapter.

The Royal Arcanum paid the money in dispute into court, and the contest is between the widow and the children of the deceased member. The widow claims, first, that there was not

a valid surrender of the second certificate, in which she is named as the sole beneficiary, and secondly, that if the second certificate is not in force the act of the deceased in preparing a written surrender of the third certificate and delivering it with the certificate to himself as secretary operated as a complete surrender of that certificate, and that she is entitled to a part of the fund as one of the beneficiaries named in the application for the fourth certificate. On the other hand the children claim that the surrender of the third certificate was not effected, and that under it they are entitled to the whole fund.

There is no ground for the first contention. The right of a member in good standing to change the beneficiary named in his certificate by the substitution of another of the class entitled is absolute. Neither the assent of the beneficiary nor the surrender of the certificate was necessary. This right was reserved in his application and in the certificates, and has been recognized by the order as fundamental, and it has been fully sustained by the decisions of this court: Fisk v. Equitable Aid Union, 20 W. N. C. 290 ; Beatty's Appeal, 122 Pa. 428.

It remains to consider whether under the facts disclosed there was a surrender of the third certificate. The manner in which a change of beneficiaries may be made as provided by the regulations of the order is this: "Sec. 337. The change of beneficiary shall take effect upon the delivery of benefit certificate, the written surrender and direction for change, as provided in the laws of the order, the proof of loss, if required, and the fee of fifty cents to the regent secretary, collector or treasurer of the council to which the member belongs." Section 334 provides: "The written surrender and direction for change of beneficiary must be forwarded under seal of the council with the benefit certificate and fee of fifty cents to supreme secretary, who shall issue a new certificate in accordance with the directions of the member, if the direction is in accordance with the laws of the order."

It will be observed that all that a member is required to do in order to effect a change is to deliver his certificate with a written request to the secretary of the council to which he belongs. The change then in the words of the section referred to "shall take effect." It then becomes the duty of the secretary to forward the papers to the supreme secretary in order

that a new certificate may be issued. The learned judge of the common pleas in a very clear and able opinion, in which he concedes that an unexecuted intention however deliberately formed and clearly indicated is inoperative to effect a change, and that every act necessary to its completion must be done in the lifetime of the member, held that the deceased acted in a dual capacity, both as an individual and as an officer, that as an individual he prepared and signed the written surrender, and delivered it with the certificate to himself as an officer; that as an officer he attested the papers, enclosed them in an envelope which he directed to the supreme secretary, and did everything required of him except to mail them; and that this failure upon his part as an officer did not affect the validity of his surrender as an individual.

This reasoning is ingenious and plausible. We are of the opinion, however, that it is not sound. The question is one of intention, to be gathered from the acts of the person. In seeking his intention, how can his acts be differentiated, and some of them imputed to him as an individual and others to him as an officer? The same mind was acting and presumably its processes were continuous. There was a time when all that was required of him as an individual had been done, and there remained to be done only what was required of him as an officer, but there was no period when the individual ceased to act and when the whole subject was not under his control. Where an act done affects the rights of others, and the inquiry is whether it was done by a person acting as an individual or in an official capacity, there may be ground for discrimination between individual and official acts, which are parts of the same general design and result from a continuous mental process. But what ground is there for such discrimination in this case, where the member was dealing with a subject in which no other person had any right, and over which he had full control?

It is only by separating the acts of the deceased and considering those imputed to him as an individual as sufficient in themselves to effect a change of beneficiaries, and also by considering them as unaffected by his subsequent conduct as an officer, that the contention of the plaintiff can be sustained. The failure to mail the papers cannot be considered as an act of omission merely. He lived in a populous city, where the mail

facilities were close at hand, and he was accustomed to the transaction of business of this kind through the mails. In the ordinary course of affairs the letter would have been mailed in a few hours at most from the time it was prepared. That it was not mailed during the six days when he was well and attending to his business, we must infer was because he had not fully decided to make the change. And this hesitation was not the hesitation of the officer, but of the individual. It was the individual throughout who was acting, and who having taken all but the last step hesitated that he might reflect further, and kept the matter under his control until he should finally decide.

The argument that if another person had been secretary his failure to mail the surrender would not have annulled or defeated the action of the member who had taken the necessary steps to effect a change of beneficiaries is without force. In such a case there would have been a delivery of the certificate and a request for a change by the member. Delivery is what is lacking in this case. Without it there was an unexecuted intention only, and this essential element can be supplied only by considering the deceased as having acted in a dual capacity, a view of the case in which we are unable to concur.

The decree is reversed without costs, and it is ordered that the balance of the fund in court after the payment of all costs in the court of common pleas and in this Court be paid to the beneficiaries designated in the certificate dated October 16, 1891, in the proportions therein named, to William A. and Charles E. Hamilton each one tenth, to Mary E. Hamilton and Adelia B. Kelly each seven thirtieths, and to Arabella Hamilton one third.