# United States Court of Appeals

### For the Eighth Circuit

_____

No. 16-1172

_____

Metropolitan Life Insurance Company

*Plaintiff*

v.

Kaye Melin

*Defendant - Appellant*

Ashley Sveen; Antone Sveen

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: November 17, 2016
Filed: April 3, 2017

_____

Before BENTON and SHEPHERD, Circuit Judges, and EBINGER,[1] District
Judge.

_____

---

[1]The Honorable Rebecca Goodgame Ebinger, United States District Judge for
the Southern District of Iowa, sitting by designation.

BENTON, Circuit Judge.

Mark A. Sveen designated his then-wife, Kaye L. Melin, as the primary beneficiary of his life insurance policy, and his children as contingent beneficiaries. Later, Minnesota extended its revocation-upon-divorce statute to life insurance policies. The district court awarded the proceeds to the children, rejecting Melin's argument that applying the statute retroactively is an impermissible impairment under the Contract Clause. Having jurisdiction under 28 U.S.C. § 1291, this court reverses and remands.

I.

Sveen purchased the life insurance policy in 1997 and married Melin later that year. The following year, he named her as the primary beneficiary and his two adult children as contingent beneficiaries. Sveen had additional life insurance with his children as primary beneficiaries. Melin and Sveen divorced in 2007. Sveen never changed the beneficiary designation on the policy.

In 2002, Minnesota amended its probate code to apply the revocation-upon-divorce statute to life insurance beneficiary designations: "the dissolution or annulment of a marriage revokes any revocable . . . beneficiary designation . . . made by an individual to the individual's former spouse." **Minn. Stat. Ann. § 524.2-804**.

When Sveen died in 2011, Melin was still the primary beneficiary on the policy. The insurance company filed an interpleader to determine whether the revocation-upon-divorce statute revoked this beneficiary designation. Sveen's children—the contingent beneficiaries—and Melin cross-claimed for the proceeds. The district court granted summary judgment to the Sveens. This court reviews constitutional claims de novo. *Walker v. Hartford Life & Accident Ins. Co.*, 831 F.3d 968, 973 (8th Cir. 2016).

II.

A.

The Sveens argue that Melin lacks standing to assert a constitutional challenge to the revocation-upon-divorce statute.

A non-party may assert a claim under a contract if the individual is a third-party beneficiary. *See Dayton Dev. Co. v. Gilman Fin. Servs., Inc.*, 419 F.3d 852, 855 (8th Cir. 2005). Third-party standing is appropriate where: (1) the litigant "suffered an 'injury in fact,' [ ] giving him or her a 'sufficiently concrete interest' in the outcome of the issue in dispute"; (2) what the litigant seeks has a "close relation" to the rights of the absent party; and (3) there is "some hindrance to the [absent] party's ability to protect his or her own interests." *Powers v. Ohio*, 499 U.S. 400, 411 (1991), *quoting Singleton v. Wulff*, 428 U.S. 106, 112 (1976).

A contested beneficiary like Melin has standing because: (1) she would suffer the loss of policy proceeds, a concrete injury, if the statute were applied; (2) she seeks to enforce the contract as written, vindicating Sveen's written intent; and (3) Sveen's death hinders his ability to protect his interest to enforce the contract. *See, e.g.*, *Mearns v. Scharbach*, 12 P.3d 1048, 1055 (Wash. Ct. App. 2000) (holding former spouse had third-party standing to assert constitutional challenge to retroactive application of revocation-upon-divorce statute where policyholder's children were contingent beneficiaries).

B.

The Contract Clause prohibits a state law from "impairing the Obligation of Contracts." **U.S. Const. art. I, § 10, cl. 1**. The prohibition, though not absolute, encompasses laws that "operate[ ] as a substantial impairment of a contractual

relationship" and do not serve a legitimate public purpose or are not "based upon reasonable conditions and [ ] of a character appropriate to the public purpose." ***Energy Reserves Grp., Inc. v. Kan. Power & Light Co.***, 459 U.S. 400, 410-12 (1983), *quoting first* ***Allied Structural Steel Co. v. Spannaus***, 438 U.S. 234, 244 (1978), *then quoting* ***U.S. Trust Co. of N.Y. v. New Jersey***, 431 U.S. 1, 22 (1977).

This court has held that a revocation-upon-divorce statute like the one here violates the Contract Clause when applied retroactively. ***Whirlpool Corp. v. Ritter***, 929 F.2d 1318, 1324 (8th Cir. 1991). There, the husband had designated his then-wife as his beneficiary before Oklahoma passed its revocation-upon-divorce statute. *Id.* at 1319-20. Two years after the statute was passed, they divorced. *Id.* The husband never updated the beneficiary designation. *Id.* This court held that automatically revoking an ex-spouse's beneficiary designation made before enactment of the statute would violate the Contract Clause. *Id.* at 1322. The unconstitutionality turned on the *policyholder's* rights and expectations:

> [A]t the time James designated Darlene as his beneficiary, Oklahoma law provided that she would remain the beneficiary unless and until he designated someone else; thus, when James attempted to order his personal affairs, this rule of insurance contract construction became a part of the insurance contract's obligations. James was entitled to expect that his wishes regarding the insurance proceeds, as ascertained pursuant to this then-existing law, would be effectuated. By reaching back in time and disrupting this expectation, the Oklahoma legislature impaired James' contract.

*Id.*

"It is a cardinal rule in our circuit that one panel is bound by the decision of a prior panel." ***Owsley v. Luebbers***, 281 F.3d 687, 690 (8th Cir. 2002). The *Whirlpool* case controls this case. The Sveens argue that *Whirlpool* is distinguishable or, alternatively, should not be followed.

-4-

Though *Whirlpool* addressed an Oklahoma statute, both it and the Minnesota statute have the same effect: to disrupt the policyholder's expectations and right to "rely on the law governing insurance contracts as it existed when the contracts were made." *Whirlpool*, 929 F.2d at 1323. The Sveens argue that *Whirlpool* is distinguishable in several ways.

First, factually: The beneficiary in *Whirlpool* was the mother of the policyholder's four minor children, while Melin and Sveen had no children together. *Id.* Though the *Whirlpool* court noted it was "plausible" that the policyholder would want to provide financial security for his children by designating their caregiver (not his new wife) as the beneficiary, this court was explaining that the statute was just as likely to "either effectuate or frustrate his intent." *Id.* The holding rested on the policyholder's right to "rely on the law governing insurance contracts as it existed when the contracts were made." *Id.* The holding did not depend on the age or number of children. *See id.*

Second, the Sveens note that Minnesota law gives a beneficiary no vested interest in the policy. *See McCloud v. Aetna Life Ins. Co.*, 21 N.W.2d 476, 478-79 (Minn. 1946). This, too, is beside the point. What matters are the policyholder's rights and expectations, not any interest of the beneficiary. *See Whirlpool*, 929 F.2d at 1323.

Third, the Sveens stress that the Minnesota statute has exceptions allowing the policyholder to "opt out of the default rule of revocation." Not only is this irrelevant to *Whirlpool*'s focus on the policyholder's right to rely on the law at the time of contract formation, but *Whirlpool* itself found a similar escape insufficient. *Id.* The Oklahoma statute allowed a policyholder to "rename" a former spouse as beneficiary, but: "This fact does not cure the constitutional infirmity." *Id.* Similarly, here, that the statute would have allowed him to opt out does not remedy the violation of Sveen's rights that would occur by applying the statute to "directly alter[ ] the obligations and expectations of the contracting parties." *Id.*

The rest of the Sveens' attempted distinctions either mischaracterize *Whirlpool* or do not confront its rationale—maintaining the policyholder's expectations under the law that existed at the time of contracting.

According to the Sveens, *Whirlpool* "undercuts the policy reasons served by revocation upon divorce statutes" because "there is no justification for extending Contract Clause concerns to a statute that only affects the donative component of a life insurance policy." *See, e.g.*, **Stillman v. Teachers Ins. & Annuity Ass'n Coll. Ret. Equities Fund**, 343 F.3d 1311, 1322 (10th Cir. 2003) (disagreeing with *Whirlpool* and citing criticism by the Joint Editorial Board for the Uniform Probate Code). *But see* **Mass. Mut. Life Ins. Co. v. Curley**, 459 F. Appx. 101, 106 (3d Cir. 2012) (relying on *Parsonese v. Midland Nat. Ins. Co.*, 706 A.2d 814 (Pa. 1998) to reach the same result as *Whirlpool*). The *Whirlpool* case rejects this argument:

> The legislature, in passing this statute, determined that people fail to consider the need to change their insurance policies after experiencing a change in family relations. . . . However, this same conclusion suggests that an individual could rely on the pre-existing law and neither know nor expect that the rules governing his policy have changed, and thus might fail to consider the need to investigate potential changes in the law.

**Whirlpool**, 929 F.2d at 1323. This court's previous opinion forecloses any conclusion other than that the statute here is unconstitutional when applied retroactively.

* * * * * * *

The judgment is reversed, and the case remanded for proceedings consistent with this opinion.

_____